IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 6, 2018 Session

## STATE OF TENNESSEE v. RONNELL BARCLAY

**Appeal from the Criminal Court for Shelby County**
**No. 14-05798        James C. Beasley, Jr., Judge**

_____

**No. W2017-01329-CCA-R3-CD**

_____

Defendant, Ronnell Barclay, was convicted after a jury trial of one count of rape of a child, one count of aggravated sexual battery, and six counts of exploitation of a minor. After a sentencing hearing, Defendant was sentenced to a total effective sentence of thirty-five years. After the denial of a motion for new trial, Defendant appeals and argues that he did not receive adequate notice of the factual basis for the charge of rape of a child, that the State withheld exculpatory statements made by the victim, and that the prosecutor made improper statements during rebuttal closing argument. After a review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and J. ROSS DYER, JJ., joined.

Stephen K. Barnes and Michael R. Working, Memphis, Tennessee, for the appellant, Ronnell Barclay.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jessica Shurson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Factual and Procedural Background*

The testimony received at trial demonstrated that since her parents' separation, the victim lived in Memphis, Tennessee, with her mother, Sandra Jones. When the victim

was around the age of seven, her father, Keith Owens, began dating someone and settled down.  At that point, the victim began to visit Mr. Owens's home, also in Memphis, on a regular basis.  Around the time that the victim reached the age of nine, Mr. Owens married Sandra Owens.  Mrs. Owens had three sons, of which Defendant is the eldest.  Defendant is approximately twelve years older than the victim.  Ms. Jones and Mr. Owens remained friends, and they had an arrangement for the victim to get to know her new family.  When Ms. Jones's employment changed, she arranged for Mr. Owens to pick up the victim after school from time to time.  As part of this arrangement, Defendant and the victim's middle step-brother would pick the victim up from school when Mr. Owens was unavailable.

The victim grew close to Defendant and called him by his nickname "JJ."  When Mr. and Mrs. Owens married, Defendant was serving in the military and lived in Colorado with his wife and three children.  Defendant separated from his wife and moved to Memphis to live with Mr. and Mrs. Owens for a month.  When Defendant moved back in with Mr. and Mrs. Owens, the relationship between Defendant and the victim changed.  Defendant began to act like something other than a step-brother, and their relationship began to incorporate sexual contact.  Eventually, Defendant moved out to his own apartment, which he shared with the victim's middle step-brother, but his relationship with the victim continued.

Mr. Owens and Ms. Jones had forbidden the victim from having a phone, but Defendant had secretly given her a phone when she was twelve years old so that they could communicate.  The victim hid the phone from her parents and talked to Defendant using the Facebook and ooVoo[1] applications.  On Facebook, the victim used a fake name.  However, the victim's identity was not fully concealed because everyone that she interacted with on Facebook knew her real identity and she had posted pictures of herself on Facebook.  On these apps, Defendant and the victim exchanged explicit pictures.  At the time, the victim liked exchanging explicit pictures.  Defendant and the victim also video chatted on more than one occasion.  During multiple video chats, Defendant asked the victim to "play" with herself, the victim complied, and Defendant would "play" with himself as well.

On the morning of Saturday, March 29, 2014, Ms. Jones received a text message from Defendant, then twenty-four years old, stating that he would like to take the victim, then twelve years old, and her youngest step-brother to Chuck E. Cheese.  Ms. Jones allowed the victim to go to Chuck E. Cheese with Defendant.  When Defendant arrived to pick up the victim, Ms. Jones looked out the window to make sure that it was

---

[1] OoVoo is a video chat and messaging application for smartphones and computers.  *OoVoo*, https://www.oovoo.com (last visited Feb. 11, 2019).

Defendant's car and did nothing more because she trusted Defendant. Two or three hours later, Defendant brought the victim back to Ms. Jones's house.

Later that night, Ms. Jones and the victim were sitting on the couch, and Ms. Jones felt a vibration coming from the seat cushions of the couch. She asked, "What is that?" The victim responded, "Nothing." Ms. Jones told the victim to get up, and Ms. Jones searched the couch. She found a cell phone. Ms. Jones looked through the phone and found explicit messages and an explicit picture exchanged between Defendant and the victim. Ms. Jones then called Mr. Owens and arranged to speak with him in person the next day. Ms. Jones and Mr. Owens showed the phone and its contents to Mrs. Owens. Soon thereafter, Ms. Jones and Mr. Owens went to the police and filed a report.

The police came to Ms. Jones's house and spoke with the victim. The victim told the police that she had been "touched" by Defendant but that she had not sent any nude pictures. Ms. Jones also took the victim to the Memphis Child Advocacy Center to be interviewed. When Teresa Honory[2] at the Child Advocacy Center asked the victim about pictures exchanged between the victim and Defendant, the victim said that she had not sent any nude pictures to Defendant. However, the victim admitted to Ms. Honory that she had sent a clothed picture of herself to the Defendant. The victim also told Ms. Honory that Defendant had digitally penetrated her. At a different point during the conversation, the victim told Ms. Honory that Defendant had given her a hug that she did not like.

The case was transferred to the Special Victims Unit of the Memphis Police Department because it involved the use of the internet. Sergeant James Taylor became involved and retrieved all of the data and messages stored on the phone possessed by the victim. Sergeant Taylor found explicit conversations between Defendant and the victim, which included the victim sending Defendant pictures of her breasts and her vagina. Sergeant Taylor's investigation focused on the one reported digital penetration of the victim and the electronic solicitation of the victim. Sergeant Taylor was not aware of a penile penetration at the time that he charged the case and sent it to the District Attorney's office.

In November of 2014, a Shelby County grand jury returned an indictment charging Defendant for rape of a child in Count One; aggravated sexual battery in Count Two; and exploitation of a minor in Counts Three through Eight. Count One alleged that Defendant sexually penetrated the victim between the dates of January 1, 2014, and

---

[2] The transcript from trial uses the name "Teresa Honory," but a pre-trial motion by the State and a Forensic Interview document contained in the technical record use the name "Teresa Onry." For consistency, we will use the name provided by the transcript. We intend no disrespect.

March 30, 2014. Count Two alleged that Defendant engaged in sexual contact with the victim between the dates of January 1, 2014, and March 30, 2014.

On February 27, 2017, the morning of trial, the prosecutor informed defense counsel that the victim had just revealed that a penile penetration had occurred on March 29, 2014. Prior to the morning of trial, Defendant and defense counsel were only notified of allegations pertaining to one digital penetration and were under the impression that Counts One and Two were alternate theories of the same offense. Without any request for a continuance from Defendant, the case proceeded to trial.

The victim's trial testimony differed substantially from the statements that she had given to the police and Ms. Honory at the Child Advocacy Center. The victim testified that the first encounter between Defendant and the victim occurred at the home of Mr. and Mrs. Owens. The victim was lying on her bed watching television when Defendant came into the room and got into bed with her. The situation seemed strange to the victim. She asked what Defendant was doing, and he responded that he was "laying" with her. So, she put some "covers" between her and Defendant to create some distance. Defendant scooted toward the victim and put his arm around her. The victim did not mind because there was "cover" between them. According to the victim, nothing else happened that night.

According to the victim, on a different occasion, Defendant, the victim, and the victim's youngest step-brother were all lying on the floor watching a movie in a different bedroom of Mr. and Mrs. Owens' house. The victim's youngest step-brother got in the top of a bunk bed and went to sleep. Defendant and the victim remained on the floor, the victim took off her own pants, and Defendant tried to put his penis inside the victim's vagina. The victim told Defendant that it was hurting and told him to stop. Defendant stopped and did not penetrate the victim, penilely or digitally.

At a later date, Defendant and the victim were watching television in the den of Mr. and Mrs. Owens' home. The victim lay on the couch with her feet propped up on a table, and Defendant rested his head on her stomach. Defendant reached down the victim's pants and digitally penetrated the victim. The victim testified that, on a family trip to Gatlinburg, Defendant began "hitting on" her in front of ten other people and that Defendant tried to have sex with her while another person was in the room.

When Defendant gave the victim a phone, he failed to give her a charger. So, the victim told Defendant to tell her mother, Ms. Jones, that he was going to take the victim and her younger step-brother somewhere as a ruse for bringing her a phone charger. Defendant called Ms. Jones and told her that he would like to take the victim and her younger step-brother to Chuck E. Cheese. Defendant picked the victim up, but they did not go to Chuck E. Cheese. Instead, they went to his apartment. Alone in the apartment,

they went upstairs to Defendant's room and "had sex," which included oral sex and unprotected vaginal intercourse. At the time, the victim was twelve years of age. Defendant had told the victim that he would take her to Miami, and she said she wanted to go with him.

The victim admitted that, initially, she did not want to talk to the police and did not want to get Defendant into trouble. The victim admitted that she lied and did not tell the truth when she spoke with Ms. Honory at the Child Advocacy Center because she did not want to get Defendant in trouble. The victim also admitted that she had falsely accused a different step-brother of touching her inappropriately. She explained that the false accusation was an attempt to get attention.

At the end of the State's case-in-chief, the trial court inquired, "[W]hich incident are you relying on for purposes of Count One and are you talking about the same incident for Count Two or is that an alternative theory for the same offense? Are you talking about separate offenses?" The prosecutor responded, "For Count One[,] I'm going to use . . . the last occurrence when she testified that he penetrated her vaginally with his penis. . . on March 29th. . . [a]t his apartment. . . . As for Count Two . . . I'm going to elect the time when he attempted to penetrate her with his penis, and she said he tried to put it in and it hurt her." Defendant raised no objection to the election of offenses.

Defendant elected not to testify. The defense put on proof that a social media account can easily be faked. Dr. Melissa Janoske, an assistant professor at the University of Memphis, teaches social media from a public relations perspective. While testifying, Dr. Janoske used a fake name and created an email address using a fake name and a Facebook account using a fake name. Also, she used her personal Facebook account to add the fake Facebook account as a friend. She then demonstrated how to send messages between the fake Facebook account and her personal account. During her messaging demonstration, Dr. Janoske illustrated the ease of finding a picture on the internet and sending it between the accounts. Dr. Janoske also testified that explicit pictures of a penis were readily available on the internet, but she refrained from downloading an explicit picture on a computer owned by the State.

Mrs. Owens also testified for the defense. She stated that she had known the victim since 2009, and she gave her opinion on the victim's truthfulness by saying, "[A]s far as [the victim's] truthfulness, my opinion is that . . . I wouldn't trust her. . . . [I]f it's something that would be a negative reaction, she's not going to tell the truth."

At the conclusion of the trial, the jury found Defendant guilty as charged on all counts. After a sentencing hearing, Defendant was sentenced to consecutive sentences of twenty-seven years, at Range II, to be served at one hundred percent, for his conviction of rape of a child in Count One, and an eight years sentence for his conviction of aggravated

sexual battery in Count Two, also to be served at one hundred percent. Counts Three through Six merged into a single conviction with a sentence of eight years, to be served concurrently with all other sentences in this case. Counts Seven and Eight merged into a single conviction with a sentence of three years, to be served concurrently with all other sentences in this case. Defendant's total effective sentence was thirty-five years, to be served at one hundred percent.

Defendant filed a motion for new trial, arguing that he had insufficient notice of the charges against him to prepare an adequate defense, that the prosecutor relied upon facts not in the record during her rebuttal, and that the prosecutor made improper personal attacks on defense counsel during her rebuttal. While discussing Defendant's argument that he received inadequate notice of the penile penetration at the motion for new trial hearing, the trial court inquired about the State's intent when seeking an indictment and about when the State decided to use the March 29th penile penetration as the factual basis for the rape of a child in Count One. The prosecutor responded, "Well, Your Honor, I didn't know what she was going to testify to having given me many, many different stories now at this point. I didn't elect any offense until after she had testified." The prosecutor agreed that she was only aware of one incident of sexual contact until the morning of trial. The trial court probed defense counsel, asking why he didn't request a continuance, and defense counsel responded, "Your Honor, simply because the case had been set for years and there had been many resets, and I frankly did not believe that that was a possibility at the time. Also, I want to be clear that we – our understanding was a shifting of days, not a shifting of Counts."

The revelation of a March 29th penile penetration on the day of trial disturbed the trial court, who remarked "it just doesn't smell good." Ultimately, the trial court determined that the defense had notice of the penile penetration, albeit last moment notice, and that the defense chose not to request a continuance. The trial court said that the issue was waived and found that "both sides entered the trial with full knowledge of what was coming." The trial court denied the motion for new trial. This timely appeal followed.

*Analysis*

*I. Notice*

In general terms, Defendant argues that he received insufficient notice to prepare a proper defense. More specifically, he argues that the first two counts of the indictment were based on only one act by Defendant and that when the State chose to pursue a conviction of a different act using the same indictment, they ran afoul of the notice

requirements of the United States and Tennessee Constitutions.[3] The State maintains that Defendant waived this issue by not seeking a remedy at trial and that Defendant is not entitled to plain error relief because the indictment was sufficient. We agree with the State.

A motion alleging a defect in an indictment must be made prior to trial, unless the indictment fails to establish jurisdiction in the court or fails to charge an offense. Tenn. R. Crim. P. 12(b)(2)(B). Additionally, relief will not be granted when a defendant failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error. Tenn. R. App. P. 36(a). When faced with the revelation that the victim alleged a penile penetration occurring on March 29, 2014, Defendant did not ask for a continuance, move for a bill of particulars, notify the trial court, or take any step toward a resolution of the problem prior to trial. When the victim testified about a penile penetration on March 29, 2014, Defendant did not raise an objection. When the State elected to use the alleged penile penetration as the factual basis for rape of a child in Count One, Defendant did not object or even mention that he had only found out about the penile penetration minutes before trial. Because Defendant's argument regarding the indictment does not pertain to the trial court's jurisdiction or whether the indictment charges an offense, this issue is waived. Therefore, Defendant is not entitled to relief unless his claim rises to the level of plain error.

Our supreme court has succinctly described the discretionary nature of the plain error doctrine as follows:

> In criminal cases, the doctrine of plain error permits appellate courts to consider issues that were not raised in the trial court. [Tennessee Rule of Appellate Procedure] 36(b), the codification of the plain error doctrine, states in part that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." We have cautioned, however, that the discretionary authority to invoke the plain error doctrine should be "sparingly exercised," *State v. Bledsoe*, 226 S.W.3d [349,] 354 [(Tenn. 2007)], because "appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbitrators of legal questions presented and argued by the parties before them." *State v. Northern*, 262 S.W.3d [741,] 766 [(Tenn. 2008)] (Holder, J., concurring and dissenting) (quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983)).

---

[3] Defendant's argument on the issue of notice is limited to a deficiency in the indictment. Therefore, Defendant has waived consideration of any other due process claim which may exist. *See* Tenn. R. Ct. Crim. App. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate reference to the record will be treated as waived in this court.").

*State v. Bishop*, 431 S.W.3d 22, 44 (Tenn. 2014). To determine whether a trial error rises to the level of justifying "plain error" relief, we look to the following five factors:

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). All five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established. *Bishop*, 431 S.W.3d at 44. Even if all five factors are present, "the plain error must be of such a great magnitude that it probably changed the outcome of the trial." *Id.* (quoting *Adkisson*, 899 S.W.2d at 642).

Our supreme court has noted that cases involving sexual offenses against children "may involve repeated criminal actions over an extended period by the defendant against a child, who may have difficulty remembering the specifics of each offense." *State v. Smith*, 492 S.W.3d 224, 233 (Tenn. 2016). "To accommodate the inherent uncertainty the prosecution faces with young children testifying about specific events on particular dates, the State may charge a single offense as having occurred over a significant span of time." *Id.* "[W]here [an] indictment charges that sex crimes occurred over a span of time, evidence of unlawful sexual contact between the defendant and the victim allegedly occurring during the time charged in the indictment is admissible." *State v. Knowles*, 470 S.W.3d 416, 423 (Tenn. 2015) (quoting *State v. Rickman*, 876 S.W.2d 824, 828 (Tenn. 1994)). However, at the end of the State's case-in-chief, it must elect the particular offense for which conviction is sought. *Id.* "The two primary purposes of this election requirement are 'to preserve a criminal defendant's right under the state constitution to a unanimous jury verdict, and to allow the State some latitude in the prosecution of criminal acts committed against young children . . . .'" *Id.* at 423-24 (quoting *Rickman*, 876 S.W.2d at 828).

Here, like in many cases of a similar nature, Defendant's indictment alleged the crimes of rape of a child by sexual penetration between January 1, 2014, and March 30, 2014, in Count One, and aggravated sexual battery by engaging in sexual contact between January 1, 2014, and March 30, 2014, in Count Two. Because of the nature of the offenses, this case contained inherent uncertainty and necessitated an open dated indictment. The face of the indictment does not limit the crimes charged to merely one

factual basis. These indictments put Defendant on notice that any sexual penetration or sexual contact between the aforementioned dates was subject to prosecution by the State. Further, the elected offenses fit squarely within the date range of the indictment and protected Defendant from double jeopardy. Defendant has failed to prove that a clear and unequivocal rule of law was breached in the formation of the indictment, in the election of offenses, or in the verdict of the jury pursuant to the indictment.

## II. Improper Statements by the Prosecutor

Defendant claims that the prosecutor misstated the evidence in her rebuttal by saying that Defendant continued to message the victim after the phone was taken away and saying that defense counsel never asked Mrs. Owens when she found out about the messages between Defendant and the victim. He also asserts that the prosecutor's comments about defense counsel lying were so improper that they require reversal and that the prosecutor introduced evidence not in the record in her rebuttal. The State maintains that Defendant failed to preserve these claims for appeal when he failed to object at trial and that Defendant is not entitled to relief because none of the claims rise to the level of reversible error. We agree with the State.

During closing argument, defense counsel made an assertion that all of the messaging ceased once the phone was taken away from the victim and presented the theory that the victim had authored all of the messages using fake accounts under Defendant's name in an attempt to get the Defendant in trouble. Defense counsel anticipated that the State would argue that Defendant stopped sending messages only after Ms. Jones informed Mrs. Owens about the discovery of the phone. Defense counsel argued that Mrs. Owens could not have notified Defendant about the discovery of the phone until long after the messaging had already ceased and, thereby, posited that Defendant had not authored the messages.

On rebuttal, the prosecutor pointed out that defense counsel's assertion was contrary to the proof presented and stated that the messages from Defendant continued after the phone had been taken away from the victim. In so doing, the prosecutor told the jury that defense counsel "lied." The prosecutor also said, "He didn't ask [Mrs. Owens] when she found out, because then he couldn't get up here and make this argument to you that's based on a lie." The prosecutor went on to say, "Did he ask her, when did you find out about this? When did you talk to the [D]efendant about this? No, he never asked that, because then he couldn't get up here and lie to you." The prosecutor also repeated the phrase "don't let him insult your intelligence." The trial court interrupted the prosecutor, called the attorneys to the bench, and instructed the prosecutor to stop calling defense counsel a liar. She complied, but the trial court did not issue a curative instruction to the jury.

When critiquing Sergeant Taylor's investigation during closing argument, defense counsel asserted that Sergeant Taylor should have asked Facebook for the IP address from which the messages attributed to Defendant were sent. On rebuttal, the prosecutor said, "[Defense counsel] asked you why [Sergeant Taylor] didn't subpoena Facebook for IP addresses. Did he ask Sergeant Taylor that? No, he didn't 'cause Sergeant Taylor would've said in response to that Facebook doesn't keep IP Address[es]."

At the motion for new trial hearing, the trial court found the prosecutor's comments about defense counsel lying to be "improper," but the court did not believe that the comments had an effect on the verdict. Also, the trial court determined that the prosecutor's remarks about IP addresses did not affect the verdict.

Defendant did not object at any point during the prosecutor's closing argument or rebuttal. Appellate relief is generally not available when a party has "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of any error." Tenn. R. App. P. 36(a). A defendant's "failure to object to the State's argument at trial precludes [this Court's] review of the issue, subject to our noticing 'plain error.'" *State v. Derrick Dewayne Lyons*, No. M2014-00178-CCA-R3-CD, 2015 WL 475158 at *9 (Tenn. Crim. App. Feb. 4, 2015) (citing Tenn. R. App. P. 3(e); Tenn. R. App. 36(a); *State v. Little*, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992)), *perm. app. denied* (Tenn. June 11, 2015). As noted above, one of the five factors necessary for plain error relief is that "consideration of the error is 'necessary to do substantial justice.'" *Smith*, 24 S.W.3d at 282. The burden is on the defendant to establish all five factors, and "complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id*. Furthermore, the error must be of "such a great magnitude that it probably changed the outcome of the trial." *Id.*

While the scope and depth of closing argument is generally a matter within the trial court's discretion, *State v. Bigbee*, 885 S.W.2d 797, 809 (Tenn. 1994), the State is not free to do what they wish. Arguments are required to be "temperate, based upon the evidence at trial, relevant to the issues being tried, and not otherwise improper under the facts of the law." *State v. Goltz*, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003) (citing *Coker v. State*, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995)). Although not exhaustive, this Court has recognized five general areas of potential improper prosecutorial argument: (1) intentionally misstating the evidence or misleading the jury as to the inferences it may draw; (2) expressing personal beliefs or opinions as to the truth or falsity of any testimony or the guilt of the defendant; (3) inflaming or attempting to inflame the passions or prejudices of the jury; (4) injecting issues broader than the guilt or innocence of the accused; and (5) arguing or referring to facts outside the record unless the facts are matters of common knowledge. *Id*. at 6.

First, we note that the prosecutor did not misstate the evidence when she said that Defendant continued to message the victim after the phone had been taken away. In fact, it appears that during the trial, defense counsel continually misstated the day on which Ms. Jones took the phone away from the victim. Defendant's final message to the victim on ooVoo was at "3/30/2014 6:05:04 AM UTC," which would have been 12:05 a.m. on March 30th in Shelby County, Tennessee.[4] Ms. Jones testified that she took the phone away from the victim on Saturday night and that she spoke to Mr. Owens on Sunday morning before filing a police report. Sergeant Taylor testified that the police report was made on March 30th. Thus, it appears clear that Ms. Jones took the phone away from the victim on the night of March 29th, and Defendant continued to send messages to the victim until 12:05 a.m. on March 30th.

However, the prosecutor misstated the evidence when she said that defense counsel did not ask Mrs. Owens when she found out about the messages between Defendant and the victim. During direct examination, defense counsel asked Mrs. Owens, "But you would know that on the day that you found out about this you did not find out until after 7:00 p.m.?" Mrs. Owens responded, "Yes, sir." Also, the prosecutor attempted to inflame the jury and injected issues broader than the guilt or innocence of the accused when she said that defense counsel had lied and implored the jury to not let him insult their intelligence. On top of that, the prosecutor referred to facts outside of the record that were not common knowledge when she said, "Sergeant Taylor would've said in response to that Facebook doesn't keep IP Address[es]." The fact that Facebook does not keep IP addresses was not in evidence and is not common knowledge, if it is even true. Moreover, it is clear from the phrasing of the statement that the prosecutor was speculating as to what Sergeant Taylor would have testified about, instead of actual testimony. To call defense counsel a "liar" was improper, unnecessary and as the experienced trial court pointed out, not "proper etiquette."

If the prosecution's argument is found to be improper, relief may only be granted when "the conduct was so improper or the argument so inflammatory that it affected the verdict to the [defendant's] detriment." *Id.* at 5. When measuring the prejudice caused by the argument, we consider: (1) the facts and circumstances of the case; (2) any curative measures undertaken by the court and the prosecutor; (3) the intent of the prosecution; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength or weakness of the case. *Id.* Given the facts and circumstances of this case, the statements by the prosecutor were relatively inconsequential. As for the prosecutor's comments about defense counsel lying, the trial court took curative action by instructing the prosecutor to cease her inappropriate behavior, but no additional curative measures were asked for or taken with regard to the

---

[4] We take judicial notice that Universal Coordinated Time (UTC) is six hours ahead of the North American Central Time Zone (CT), in which Shelby County, Tennessee is located.

other improper statements. The intent of the prosecutor is certainly questionable. There were no other trial errors identified which would accumulate with the improper statements. The circumstantial evidence strongly supported the victim's account of what happened, and the prosecutor's statements pertained to matters that were not central to the case. Ultimately, we conclude that the improper statements did not affect the verdict to the Defendant's detriment, and thus, consideration of the error is not necessary to do substantial justice.

### III. Brady Claim

Defendant also claims that the prosecutor revealed the existence of undisclosed statements by the victim during the motion for new trial hearing when she said, "I didn't know what she was going to testify to having given me many, many different stories now at this point." The prosecutor made this statement after Defendant's argument that he had insufficient notice of the charges against him to prepare an adequate defense. The State argues that this claim is waived for failure to raise the issue in the trial court. A defendant's ability to amend a motion for new trial ceases on the day of the hearing, and testimony at the motion for new trial hearing is limited to the issues raised in the motion for new trial. Tenn. R. Crim. P. 33(b), (c)(1). Arguably, Defendant did not have an opportunity to respond since this revelation by the State came at the close of the trial court process.

Nevertheless, defense counsel took no action at the motion for new trial hearing in response to the prosecutor's comments about the victim's contradictory statements. Defendant failed to object or ask for a continuance to further address any potential Brady violation. The trial court had no opportunity to make a ruling on the Brady claim. Because Defendant failed to make an effort to address the issue at the trial level and raised it for the first time on appeal, the issue is waived. See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); State v. Franklin, No. M2017-00180-CCA-R3-CD, 2018 WL 1100962, at *4 (Tenn. Crim. App. Feb. 27, 2018) (holding the defendant's issue was "waived because the [d]efendant raise[d] it for the first time on appeal"); State v. Howard, 504 S.W.3d 260, 277 (Tenn. 2016) ("It is well-settled that a defendant may not advocate a different or novel position on appeal."); State v. Johnson, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996) ("Issues raised for the first time on appeal are considered waived.").

Furthermore, Defendant is not entitled to plain error review of this issue. The doctrine of plain error applies when all five of the following elements have been established:

(1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the issue was not waived for tactical reasons; and (5) consideration of the error is necessary to do substantial justice.

State v. Minor, 546 S.W.3d 59, 67 (Tenn. 2018). A defendant's failure to establish any of these criteria requires denial of relief under the plain error doctrine, and "an appellate court need not consider all criteria when the record demonstrates that one of them cannot be established." Id. "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." State v. Page, 184 S.W.3d 223, 231 (Tenn. 2006). Here, the record does not clearly establish what occurred at the trial court. Due to Defendant's failure to object, it is unclear to which of the victim's statements the prosecutor was referring during the hearing. Thus, plain error review is not applicable.

*Conclusion*

For the aforementioned reasons, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE